IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 04-03127-02-CR-S-ODS |
| | ) | |
| RICK D. CANTRELL, | ) | |
| | ) | |
| Defendants. | ) | |

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

Defendants Debra James and Rick Cantrell previously filed a motion to suppress evidence in this case. After an evidentiary hearing, the Court recommended that the motion to suppress be denied as to Debra James, which recommendation was adopted by the District Court. This Court then entered a Report and Recommendation, clarifying that the recommendation also applied to defendant Rick Cantrell. Defendant Cantrell then filed a Supplemental Motion to Suppress Evidence in which he asserted that all evidence discovered during the search of the residence on October 8, 2004, should be suppressed. The government responded to that motion. The undersigned thereafter entered a Report and Recommendation, in which it was recommended that the Supplemental Motion to Suppress be denied. Defendant Cantrell filed Objections to the Report and Recommendation. Pursuant to the direction of the District Court, a hearing was held on defendant Cantrell's Supplemental Motion to Suppress on September 21, 2006, before the undersigned. Defendant was present with counsel, Shane Cantin, and the government was represented by Richard E. Monroe, Assistant United States Attorney.

In the supplemental motion, defendant contends that, at the time of the search and arrest, he

was a lawful co-occupant of the residence in question. Relying on Georgia v. Randolph, 547 U.S. –, 126 S.Ct. 1515 (2006), defendant contends that he did not give consent to search the residence, but rather, refused a consent search, and told the officers that they had to obtain a warrant. It is asserted that the officers only obtained consent from defendant James, and that they searched the residence despite his specific refusal. Therefore, he contends that the warrantless search of the residence was unreasonable and in violation of the Fourth Amendment.

The government first called Ron Wallace, who testified on December 21, 2005, in the first hearing before this Court. He testified at the second hearing that defendant Cantrell did not object to the search of James' house. In fact, Mr. Wallace stated that defendant Cantrell cooperated after he was arrested, when the officers conducted a protective sweep of the house for officer safety. He testified that defendant Cantrell actually pointed out a marijuana joint in a Marlboro cigarette pack lying on the table.

On cross examination, Mr. Wallace stated that, after Debra James was arrested and detained at the vehicle, he asked if defendant Cantrell was at the house and whether they could go get him. Debra James said "yes" to both questions. When he and Deputy DeGase went to the house, they made contact with Cantrell and placed him under arrest. His report states that the officers did a brief protective sweep of the house. Mr. Wallace's report indicates that he saw, in plain view, a glass vial next to a syringe lying on the dining room table, powder in the vial, paint thinner, acetone, and mineral spirits, as well as the marijuana cigarette. Mr. Wallace testified that at no point did defendant Cantrell object to the search. It was his testimony that, after arresting defendant and seeing the delineated items in plain view, the officers went back to the vehicle where Debra James was, and asked for consent to search the residence. She asked to be with them during the search, and they granted that request. He had prior information from an informant that defendant was living

at the James residence. Prior to conducting the search of the residence, defendant had asked them to get his wallet, which was inside the house. He said it was either in the kitchen or in a bag of things in the bedroom. The officer located the bag in the bedroom and found the wallet in it. In the bedroom, they also found drugs and firearms. At no time during the discussion that they were having with defendant Cantrell did he object to the search of the residence. Defendant Cantrell was not put into a patrol car with Debra James.

Defendant called Debra James, the co-defendant in this case. She and her father owned the residence in question. She testified that on October 8, 2004, she was arrested. Rick Cantrell was at the residence that day. Prior to that date, she and defendant had a relationship and had lived together. She had been staying in Springfield a lot in the month prior to her arrest, but she estimated that defendant had stayed at her residence for about two weeks of the previous month. It was her testimony that sometimes Cantrell stayed there without her, that he had stayed there the night before the arrests, that he had her permission to come and go from the residence, and that when he was there, they shared a bedroom. There was no part of the house that he was restricted from using.

On October 8, when she was arrested, Officer Wallace asked her if defendant Cantrell was there at her house, and if she had any guns there. Officer Wallace did not ask her for permission to go into her house to arrest Cantrell. He was gone about ten minutes and then came back and took her to the house. Deputy Johnson had stayed with her. When they got to her house, she stayed in the patrol car, and defendant was placed in the car with her. Prior to that, she saw the officers bring him out of her house and across the yard, and she could hear defendant Cantrell yelling. She heard him yell to get a search warrant, and heard him say that everything in the house was his. Mr. Cantrell was placed in the patrol car with her for about a minute, and during that time, he told her not to let the officers search, and to get a search warrant. After that, the officers jerked Mr. Cantrell

out one side of the vehicle, and her out the other, and she didn't know what they did with defendant Cantrell. Officer Wallace and Deputy DeGase were talking to her and asked her to let them search her house. At first, she did not say yes, but rather, asked them why. She was told the officers could go to town and get a search warrant, so she ultimately consented to the search if she could be present.

On cross examination, Ms. James testified that she'd never mentioned anything about Mr. Cantrell asking for a search warrant when she was interviewed by Special Agent Burlew because they didn't really talk about this case. She admitted that she had told him that she'd recently used methamphetamine again, and she also told him that the five firearms were hers. She denied that defendant Cantrell had actually given her any of the firearms, although she said that he did allow her to have two of them as gifts. She denied telling Agent Burlew that she had gone to Bates County with defendant Cantrell to steal anhydrous ammonia. Ms. James stated that she told Agent Burlew that if there was methamphetamine found, it was defendant Cantrell's. She knew that he was a felon because he was on parole. She denied saying that defendant had told her, on the trip back from Bates County, about stealing anhydrous ammonia so that he could cook more methamphetamine. Ms. James stated that she'd never been married to defendant, and that he probably had more than one girlfriend at the time he was arrested. According to Ms. James, her father never asked, so she did not ever tell him that defendant had permission to stay at the residence. She acknowledged that she did not have a permit to possess or receive any of the three pistols that were found at her residence. She did not know the vehicle she was arrested in had been stolen. As far as she knew, Rick Cantrell had bought it, because that is what he told her. Ms. James testified that prior to this hearing, she had not told anyone about defendant Cantrell demanding a search warrant.

In <u>Randolph,</u> the Supreme Court addressed the issue of whether a warrantless search was

lawful where one occupant of a residence gave permission to search, while the other, who later sought to suppress the evidence, was present at the scene and expressly refused to consent. The Court held that, "in the circumstances here at issue, a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him." Id. at 1518-19.

Having reviewed the testimony adduced at the hearing, as well as the positions of the parties and the testimony at the prior hearing held in this case, the Court finds that defendant Cantrell's Supplemental Motion to Suppress is without merit and should be denied. At the outset, it should be noted that based on the testimony as a whole, it can be assumed that defendant Cantrell was a co-occupant of the residence at the time in question. Specifically, Officer Wallace testified that he had information from an informant that defendant Cantrell was living at the James' residence. Further, it is apparent from Debra James testimony that the two had an on-going relationship. Therefore, the only issue before the Court is whether defendant Cantrell, who was present at the scene, expressly refused consent to search.

As previously ruled by this Court, there is no credible evidence that defendant Cantrell ever refused consent to search Debra James' residence, either expressly or impliedly. Regardless of his relationship with Ms. James or his privacy interests in the residence itself, there has been no credible evidence before the Court that would alter the initial Report and Recommendation in this case. Ms. James does not deny that she gave consent to search her residence. There is no evidence that she was coerced into doing so. In fact, the testimony adduced at the hearing was consistent in that she granted consent and requested to be present, which the officers allowed. The officers who testified stated that defendant Cantrell never objected to the search. Ms. James testified at the second hearing that defendant loudly and specifically objected to the search in her presence, as he was being

brought out by the officers. He allegedly yelled going across the yard that the officers needed to get a search warrant. Then, he was placed in the patrol car with her and told her not to let the officers search and to get a search warrant. She admits that she had never told anyone this story until this hearing. Her testimony was contradicted at this hearing by that of Mr. Wallace, who specifically stated that defendant Cantrell did not ever object to the search. In fact, Mr. Wallace testified that he even asked the officer to retrieve his wallet when he went inside the residence. It cannot be denied that Ms. James has had a close relationship with defendant, and that her testimony may have been colored by her relationship with him. She also admitted to being a methamphetamine user, and to have weapons given to her by defendant Cantrell, whom she knew to be on parole. The Court concludes that her rendition of the events on the day in question is simply not credible. Based on the totality of the circumstances, the Court finds that it must be recommended for the reasons previously stated, as well as the reasons stated herein, that defendant Cantrell's Supplemental Motion to Suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 22 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant Cantrell's Supplemental Motion to Suppress be denied.

/s/ James C. England
JAMES C. ENGLAND, CHIEF
UNITED STATES MAGISTRATE JUDGE

Date: 10/18/06