IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 04-03127-02-CR-S-ODS |
| | ) | |
| RICK CANTRELL, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND SUPPLEMENTAL REPORT AND RECOMMENDATION, AND DENYING DEFENDANT'S MOTION TO SUPPRESS</u>**

On February 17, 2006, the Honorable James C. England, United States Magistrate Judge for the Western District of Missouri, issued his Report and Recommendation (the "Report") recommending that Defendant's Motion to Suppress be denied. Defendant requested and received permission to file a Supplemental Motion to Suppress. On June 27, 2006, Judge England issued a Supplemental Report and Recommendation ("Supplemental Report") recommending that Defendant's Supplemental Motion to Suppress be denied. Defendant filed timely objections to the Supplemental Report. At the Court's request, Judge England conducted a second hearing to further develop the factual circumstances, and Judge England issued his Second Supplemental Report recommending that Defendant's motions be denied. The Court has conducted a de novo review of the record, and now overrules Defendant's objections.

On October 8, 2004, officers from the Douglas County, Missouri, Sheriff's Office entered property known to be owned by co-Defendant Debra James and her father. The officers had a federal warrant for James' arrest, which the Court has previously held justified the entry onto the property. In addition, the officers had information that Defendant was at James' residence; they also had a state warrant for Defendant's arrest. The officers encountered James as she was leaving the property and arrested her, and she confirmed Defendant was in the house. She also told the officers there

were guns in the house.  Tr. at 30-31.  The officers knocked on the door, and Defendant answered.  The officers arrested him "just inside the front door."  Supplemental Motion at 2; see also Tr. at 32.  At some time after both individuals were arrested, James gave her consent for the officers to enter the house.  Tr. at 31, 33.  Defendant asserts he refused to give consent, so the search was invalid as to him under Georgia v. Randolph's holding "that a physically present co-occupant's stated refusal to permit a search renders warrantless entry and search unreasonable and invalid as to that occupant."  Supplemental Motion at 3.

It must be remembered that Randolph was decided more than a year after the search in question, and until that time the law in this Circuit (and elsewhere) provided that consent from one co-occupant was legally sufficient to permit police to search a dwelling.  Given the then-existent state of the law, the Court finds the officers' statements that they did not seek Defendant's consent to be credible; consequently, the opportunity to decline the request for consent did not arise.  Defendant's contention – that he spontaneously and loudly disclaimed a grant of consent – is unbelievable not only for the reasons stated in the Second Supplemental Report, but also because Defendant's desire to invoke Randolph's protections could not have existed.  Moreover, Defendant asked the officers searching the residence to retrieve his wallet and told them where it was; this is inconsistent with his claim that he protested their entry into and search of the house.

There is a factor of even greater importance that seems to have been forgotten: the officers had a warrant for Defendant's arrest.  They had good reasons to believe Defendant was in James' house, including the fact that she told them he was there.  James also told the officers there were guns in the house.  The officers arrested Defendant and, having done so, were authorized to further enter the premises and assure themselves that nobody else was inside who might pose a threat – particularly in light of James' acknowledgment that firearms were in the house.  E.g., United States v. Cash, 378 F.3d 745, 747-48 (8th Cir. 2004), cert. denied, 544 U.S. 963 (2005); United States v. Clayton, 210 F.3d 841, 845 (8th Cir. 2000).  In fact, the officers conducted the sweep prior to obtaining James' permission, and during the sweep drugs and drug

2

paraphernalia were observed in plain sight on the dining room table. It was at this point James' consent was sought and obtained; with her consent and (at her request) her presence, the officers re-entered the house.

In many respects, this case is similar to United States v. Lloyd. "[T]he deputies entered Lloyd's residence to execute the arrest warrant and saw the methamphetamine lab in plain view. At this point the deputies could have proceeded with a limited search under the exigent circumstances exception to the warrant requirement because once they entered the house legally they were not required to ignore the illegal drug operation." 396 F.3d 948, 954 (8th Cir.), cert. denied, 125 S. Ct. 2558 (2005) (internal quotations omitted). Here, the deputies entered the house to arrest Defendant, which entitled them to insure nobody else was in the house. Firearms were found under a bed (which is a place a person could have been hiding), and drug- and drug-making paraphernalia was observed on the dining room table. Upon seeing these items in plain sight, Lloyd holds the officers were not required to wait for a warrant. Moreover, they were not required to obtain consent, so any alleged infirmity (including a violation of Randolph) is irrelevant. The recent decision of United States v. Poe also provides support for the Court's analysis. 462 F.3d 997, 1001-02 (8th Cir. 2006).

Defendant's Motion to Suppress is denied.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: November 21, 2006          UNITED STATES DISTRICT COURT